Nos. 21,960 and 21,961.

CHARLES L. MORGAN, *Appellee*, v. THE GERMANIA FIRE INSURANCE COMPANY and THE NORTHWESTERN NATIONAL INSURANCE COMPANY, *Appellants*.

SYLLABUS BY THE COURT.

1. INSURANCE—*Verdict—Findings.* The general verdict in favor of the plaintiff is held to be in effect a sufficient finding that the fire occurred without the plaintiff's fault.

2. SAME—*Terms of Policy—Insured to Submit to Examination—Refusal Did Not Avoid the Policy.* The provision that when required the plaintiff should submit to an examination under oath was not made a condition precedent to recovery, and his refusal to comply when called upon, did not, under the circumstances shown, constitute a valid defense.

3. SAME—*Provisions of Policy—No Gasoline Allowed on Premises—Gasoline in Motor Car Avoided the Policy.* The policies provided that they should be void if the insured "kept, used or allowed on the premises gasoline . . . or petroleum or any of its products of greater in-

Morgan v. Insurance Co.

flammability than kerosene oil." *Held*, that the plaintiff's keeping in the building for two or three months his Ford car with its gasoline tank from one-third to entirely full of gasoline (although not in the building the night of the fire) violated this provision and avoided the policies.

Appeal from Sumner district court; OLIVER P. FULLER, judge. Opinion filed March 8, 1919. Reversed.

*Ed T. Hackney*, of Wellington, and *C. C. Crow*, of Kansas City, Mo., for the appellants.

*W. M. Ready*, and *W. W. Schwinn*, both of Wellington, for the appellee.

The opinion of the court was delivered by

WEST, J.: The defendants issued to the plaintiff two insurance policies on a frame feed barn. They each contained a clause that the insured as often as required should exhibit to any person designated by the company all that remained of any property therein described, and submit to an examination under oath by any person named by the company and subscribe the same. They also provided that they should be void if the insured then had, or there should be kept or allowed upon the premises gasoline or petroleum or any of its products of greater inflammability than kerosene oil. Each policy provided that it should be payable in sixty days after receiving proof of loss. The barn was burned June 2, 1917. On July 23 proofs of loss were served and on September 27 the action was brought. November 5 the defendants moved to require the petition to be made more definite and certain by setting out the proof of loss. This was overruled.

January 24 answers consisting of general denials were filed, and in February, following, amended answers were filed consisting of a general denial and the allegation that on the 4th of that month notice had been served on the plaintiff to appear for examination, which he refused to do, thereby avoiding the policies. On the 28th of February the plaintiff notified the defendants' attorney that he would on the 7th of March appear for examination. No examination was made. On March 12 this fact was set up by supplemental reply. It was shown on the trial that proofs of loss were made and delivered to the

Morgan v. Insurance Co.

defendants more than sixty days before the action was brought and that no objection had been raised thereto and no objection made to the payment of the policies until the suit had been brought. The plaintiff recovered, and the defendants appeal and assign as error the refusal of the court to find for them at the conclusion of the plaintiff's evidence and the refusal to grant a new trial.

They argue that the plaintiff failed to prove his allegation that the building was destroyed without his fault, and that the policies were made void by his having kept his Ford car in the barn with some gasoline in it, and also that the failure to submit to the examination when called upon was fatal to his case.

Assuming, without deciding, that the burden was on the plaintiff to prove his allegation that the building was burned without his fault, it suffices to say that the general verdict in his favor must be construed as likewise settling this question.

The provision that the insured should submit to an examination when required was not made a condition precedent to recovery and hence his refusal did not, under the circumstances shown, avoid the policies. Counsel cite four cases to sustain their contention that this provision, together with the refusal, avoided the policies. (*Pearlstein v. Insurance Co.,* 70 S. C. 75; *Firemen's Fund Ins. Co. v. Sims,* 115 Ga. 939; *Sims v. Assur. Soc.* 129 Fed. 804; *Harris v. Phoenix Ins. Co.,* 35 Conn. 310.) In the Pearlstein case a nonsuit was asked because a similar provision, with others, had been violated, and it was held properly refused because waiver might have been shown. As to the examination clause it was merely held that the insured could not avail himself of the excuse for noncompliance that he had fled to avoid arrest for homicide. In the Firemen's Fund case the policy provided that no suit could be maintained until after a compliance with this provision. The same thing was true of the Sims case and the Harris case. In cases involving the iron safe clause we have held that it's violation avoided the policy when so stated therein. (*Grandon v. Insurance Co.,* 99 Kan. 785, 163 Pac. 458.)

The plaintiff testified that he had kept his Ford car in the barn most of the time for two or three months, and that it held

25—104 KAN.

ten gallons of gasoline and was from one-third to entirely full while in the barn. While he testified that it was not in the barn the night of the fire, the defendants contend that the provision was so violated as to preclude recovery. *Insurance Co. v. Comm'rs of Shawnee Co.*, 54 Kan. 732, 39 Pac. 697, is cited. There, however, the policy forbade the keeping or use of gasoline upon the insured premises, and it was expressly agreed that the violation of this condition should avoid the policy. It was said in the opinion that gasoline stoves and lamps were used without hinderance or restraint, and that the facts showed clearly that the fire which destroyed the property was occasioned by such use, a situation quite unlike that now presented for consideration.

In *Insurance Co. v. Johnson*, 69 Kan. 146, 76 Pac. 419, the vacancy clause in the policy was to the effect that the latter became void if the premises became vacant for thirty days. More than thirty days after the house became vacant the other building was destroyed by a wind storm. It was decided that this building was also vacant and that the vacancy voided the policy. In *Insurance Co. v. Russell*, 65 Kan. 373, 69 Pac. 345, the policy provided that it should be void if the buildings became vacant without consent. They became vacant and so remained for twelve days, but were reoccupied before any loss was sustained. It was held that the vacancy forfeited the insurance and that the reoccupancy did not revive it. It was held in *London & L. Fire Ins. Co. v. Fischer*, 92 Fed. 500, that a clause similar to the one before us was not violated by merely permitting gasoline to be carried through the building. In *Norwaysz v. Thuringia Ins. Co.*, 204 Ill. 334, it was held that a violation of such a clause avoided the policy and that it was not incumbent on the insurer to show that such violation contributed to the loss. The opinion in *Imperial Fire Ins. Co. v. Coos County*, 151 U. S. 452, contains this language:

"The condition which was violated did not, in any way, depend upon the fact that it increased the risk, but by the express terms of the contract was made to avoid the policy if the condition was not observed." (p. 465.)

The policy considered in *Harper v. The Albany Mutual Insurance Company*, 17 N. Y. 194, provided that if the building should be used for purposes extra hazardous the policy should be of no force so long as such use continued. Camphene, spirit

gas or burning fluid were forbidden to be used unless by permission indorsed on the policy. The plaintiffs conducted a bookbinding business and used camphene for cleaning rollers, wood cuts and electrotype plates, as was usual among printers, and necessary and indispensable. The policy gave the privilege of carrying on the printing business, and the insurer was held liable. The fire was caused by the act of a plumber throwing a lighted match into a pan containing a small quantity of camphene. The same ruling was made in *Harper v. New York City Insurance Company*, 22 N. Y. 441, three of the judges vigorously dissenting. These decisions were followed in *Hall et al. v. Ins. Co. of North America*, 58 N. Y. 292. The storage and use of enough kerosene to light a paper mill was held not to violate a clause prohibiting the storage or use of petroleum, rock and earth oil, in *Buchanan v. Exchange Fire Ins. Co.*, 61 N. Y. 26. In *Shader v. Railway Passenger Assurance Co.*, 66 N. Y. 441, it was held that the death of the insured occurred while he was drunk, and that this avoided the policy, although he was killed by a pistol shot, the policy providing that no claim should be made if the death happened while or as a result of intoxication. The Missouri court of appeals in *La Force v. The Williams City Ins. Co.*, 43 Mo. App. 518, held that a provision that the policy should become void if gasoline was kept, used or stored on the premises was not breached by the "occasional introduction of small quantities of gasoline into the house, for the purpose of destroying vermin and cleaning clothes. . . ." (syl. ¶ 3.) The rule was announced to be that to forfeit a policy requires the use of the prohibited article for the ordinary purposes to which it is usually put, and that an occasional use for a temporary and extraordinary purpose connected with the occupation of the premises is not fatal.

The supreme court of Missouri held in *State ex rel., v. Ellison*, 269 Mo. 410, that a clause against incumbering the insured property was no less binding because it's violation did not increase the hazard, the doctrine being plainly and forcibly declared that the courts cannot make contracts for parties qualified to make their own.

Courts and text-writers differ as to what constitutes a breach of such a provision as we are considering. But we believe and hold that the amount of gasoline kept in the car in

the barn for two or three months was a breach thereof, and not a permissible and negligible deviation therefrom.

The parties, fully competent, fairly contracted that "this. entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has, or . . . if (any usage or custom of the trade or manufacture to the contrary notwithstanding) there be kept, used or allowed upon the above described premises, gasoline or petroleum, or any of its products of greater inflammability than kerosene oil." Thus the contract was not to insure a feed barn in which a car with a tank of gasoline should be kept or stored, but one free from such inflammable stuff. The plaintiff should have kept his contract or should have had indorsed thereon consent to keep his car in the building.

The judgment is reversed, with directions to enter judgment for the defendant.