**METROPOLITAN LIFE INSURANCE CO., Plaintiff-Appellee,**

v.

**Gary P. KASE, Defendant-Appellant.**

**No. 82–4409.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 1983.

Decided Oct. 12, 1983.

John E. Fischer, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for plaintiff-appellee.

Carl J. Debevec, Debevec, Jackson & Stevens, Vacaville, Cal., for defendant-appellant.

Before STEWART,* Retired Associate Justice, DUNIWAY, Senior Circuit Judge, and ALARCON, Circuit Judge.

DUNIWAY, Circuit Judge:

In this case, of which we have diversity jurisdiction under 28 U.S.C. § 1332, Kase appeals from a summary judgment against him and in favor of Metropolitan Life Insurance Co. We reverse.

I. *Facts.*

Kase was a civil service employee of the U.S. Navy. Metropolitan had issued to the Civil Service Commission a group policy, which contained certain disability provisions. In April 1974, while working as a

* The Honorable Potter Stewart, Retired Associate Justice, United States Supreme Court, sitting by designation.

rigger at the Mare Island Naval Shipyard at Vallejo, California, Kase suffered a severe eye injury. He was examined by an ophthalmologist, who concluded that "there is no possibility of useful vision being restored to the right eye as a result of further treatment or surgery or both, and in my opinion the loss is irrecoverable." CR 12, Ex. 1. Metropolitan's policy provided for a lump sum payment if an employee suffered "Total and Irrecoverable Loss of Sight of One Eye." The company accepted the doctor's report and paid Kase the appropriate lump sum, $12,500, in December 1974. It does not now contend that the doctor's report was fraudulent and does not attack the doctor's qualifications.

In 1977, for reasons that neither party can explain, sight returned to Kase's right eye. When Metropolitan learned of the apparent miracle, it demanded return of the $12,500. Kase refused and Metropolitan brought this action. On cross motions for summary judgment, the district court entered judgment for Metropolitan. It ordered Kase to refund the $12,500, but denied Metropolitan's claim for interest.

## II. *District Court's Order.*

The district court granted Metropolitan's motion for summary judgment "on the grounds that [Metropolitan's] payment of $12,500.00 was based upon a mistake of fact as to whether the defendant's sight was irrecoverable." Order and Judgment, CR 15 at 1; *see* Restatement of Restitution § 18 (1937).

There was no dispute as to the reasonableness of the ophthalmologist's opinion that the loss of vision was "total and irrecoverable," nor as to either party's reliance on that opinion. Therefore, our only task in reviewing the summary judgment is to determine whether the district court correctly applied the substantive law. *Gaines v. Haughton,* 9 Cir., 1981, 645 F.2d 761, 769. We owe deference to the district court's interpretation of the law of the state in which it sits, *see id.* at 770, and will uphold that determination unless it is clearly wrong. *Washington v. Northland Marine Co.,* 9 Cir., 1982, 681 F.2d 582, 584–585.

There are no California cases in point. The trial judge had to predict what the California courts would decide if the case were before them, and we must do the same. *Cf. In re Mistura, Inc.,* 9 Cir., 1983, 705 F.2d 1496, 1497. In such a case, particularly when, as here, the two members of this court who are on the panel are former California appellate judges, we perhaps owe the trial judge a little less deference than we otherwise would.

## III. *Mistake of Fact.*

Cal.Civ.Code § 1577 defines a mistake of fact as "a mistake ... consisting in ... 2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed." Kase argues that the parties' mistake was not as to "the present existence of a thing material to the contract," nor as to "the past existence of such a thing," but as to a thing to occur or not occur in the future. He contends that because the mistake was as to a *future* fact, restitution is not warranted. Metropolitan argues that the doctor's opinion dealt with the *present* existence of the condition of being "irrecoverable," which subsequent events have shown to be mistaken.

Both parties are right. The doctor was stating a "present" opinion, that the loss of sight was "total" and "irrecoverable." But he was also speaking of the future and saying that the condition, loss of sight, would continue, and would continue to be "irrecoverable."

There is no contention here that the doctor's opinion, when given, was wrong. Metropolitan does not argue that, when the opinion was given, there was any known way in which medical science could restore Kase's sight or any known way in which the body could unaidedly recover that sight. How that sight was recovered three years later remains a mystery. Under these circumstances, we do not see how it can be said that the opinion, when given, was "mistaken." Had there been a known way, either artificial or natural, of recovering that sight, we would have a different case.

The California courts have held that mistakes as to the occurrence of future events are generally not mistakes of fact that will support rescission. *Holt v. Thomas,* 1894, 105 Cal. 273, 276, 38 P. 891; *Hultin v. Taylor,* 1970, 6 Cal.App.3d 802, 806, 86 Cal.Rptr. 285, quoting Cal.Civ.Code § 1577. Those cases did not involve a doctor's opinion such as we have here, but in principle they are in point.

Metropolitan argues that the prediction embodied in the doctor's opinion, that the loss of sight would continue, was also a statement as to a "present existence of a thing material to the contract" within Cal. Civ.Code § 1577. We think not. In recent years, the remarkable progress of medical science has upset many a doctor's opinion that was valid when given. Severed arms or hands or fingers can sometimes be re-attached. Various operations, including eye operations, that were unheard of a few years ago are now possible. If, after an accident that causes an irreparable or irrecoverable loss, a new technique or treatment is devised that makes the injury reparable or recoverable, must the injured party repay the insurance money that he has received? We think not. Should it make a difference that the recovery occurs without medical assistance, when the occurrence is one for which there is no known explanation? Again, we think not.

"Irrecoverable" is the insurance company's word and its ambiguity must be construed against the company. *See Price v. Zim Israel Navigation Co.,* 9 Cir., 1980, 616 F.2d 422, 426; *Royal Indem. Co. v. Kaiser Aluminum & Chemical Corp.,* 9 Cir., 1975, 516 F.2d 1067, 1072. There is a risk, albeit a small one, in using it. Between fortuities of nature and advances in technology, there is always a chance that some loss, described as and believed to be irrecoverable, can later be recovered. This seems especially true when the loss is one of capacity, such as sight, hearing, speech, etc. Thus, the term "irrecoverable" should not be treated as absolute. The real question is what is a reasonable way to treat that term for the purposes of insurance policies that do not specifically provide for what is to happen if the impossible becomes possible.

Metropolitan relies on G. Couch, Cyclopedia of Insurance Law § 74:189 (R. Anderson 2d ed. 1968), which states that if an insurer is induced to pay a claim by a mistake of fact, "the money so paid may be recovered." There are cases to which this statement can properly apply, but we think that this is not one of them.

Reversed and remanded with instructions to enter judgment for Kase.